**In re D.S.**

[Cite as *In re D.S.*, 160 Ohio App.3d 552, 2005-Ohio-1803.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA2004–04–036 and CA2004–04–046.

Decided April 18, 2005.

554

Rachel A. Hutzel, Warren County Prosecuting Attorney, and Mary K. Hand, Assistant Prosecuting Attorney, for appellee, state of Ohio.

Thomas G. Eagle, for appellant, D.S.

VALEN, Judge.

{¶ 1} Defendant-appellant, D.S., appeals the decision of the Warren County Juvenile Court adjudicating him a delinquent child for committing rape and gross sexual imposition. We affirm the decision of the trial court.

{¶ 2} In a two-count complaint, appellant, age 11 at the time of the offenses, was alleged to be delinquent for the commission of rape. The counts involved two separate victims. At trial, one of the victims, an 11–year–old boy, testified that he and appellant were friends and he spent the night at appellant's house. The victim testified that he, appellant, and appellant's brothers were upstairs in the house, listening to "Slam" on the radio. They then turned on the television, watching the Playboy channel, then some other movies. The victim testified that they all went to sleep, but he was awakened when he felt "something like going up" his bottom. He testified that it didn't go far up his bottom, but went into the hole about an inch. The victim testified that he woke up and turned around to see what it was and saw appellant lying next to him. The victim said appellant appeared to be asleep, but was holding his finger and squeezing his hands. He testified that he believed appellant was responsible because the only other person in the room was on the top bunk and the victim and appellant were on the bottom bunk. The victim testified that he decided to get out of bed and go home because something strange was going on, so he went home and told his mother what occurred.

{¶ 3} The second victim, also 11 years old, testified that he spent the night at appellant's house one night and that appellant "tried to put his finger up my

butt." The second victim testified that he was lying on his back and appellant pulled down the victim's pants and "almost had his finger stuck up my butt," between his cheeks and coming close to the hole. He stated that appellant started laughing after the incident. The first victim corroborated the second victim's story by testifying that he was spending the night with appellant one night when he saw someone he believed to be appellant reaching his hand into the second victim's pants.

{¶ 4} Detective James Englehart, who works in child-abuse investigations at the Warren County Sheriff's Office, testified that he spoke with appellant after his name came up as a suspect in the sexual-abuse investigation. The detective testified that appellant admitted touching the first victim on his buttocks and the second victim on the "front side."

{¶ 5} The trial court found that appellant had committed rape of the first victim and the lesser included offense of gross sexual imposition on the second victim. At a dispositional hearing, the court placed appellant on probation with numerous conditions, including sex-offender therapy, psychiatric services, a requirement of full-time adult supervision, and submission to a polygraph as directed by the probation officer or therapists.

{¶ 6} Appellant now appeals his adjudication as a delinquent child and the trial court's dispositional order. He raises three assignments of error for our review.

## Delinquency Finding Based on the Commission of Rape

{¶ 7} In his first assignment of error, appellant argues that the trial court erred in adjudicating appellant a delinquent child for the commission of rape. He contends that the victim's testimony was "inconsistent, hesitant, uncorroborated, [and] improbable if not impossible" and failed to identify the perpetrator. He argues that the conviction was based on insufficient evidence and is against the manifest weight of the evidence.

 {¶ 8} Sufficiency of the evidence and weight of the evidence are legally distinct issues. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Essentially, the test for sufficiency is whether the prosecution met its burden of production, while a manifest-weight challenge tests whether the prosecution met its burden of persuasion. Id. at 386–388, 678 N.E.2d 541.

 {¶ 9} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether the evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Goodwin* (1999), 84 Ohio St.3d 331, 343–344, 703 N.E.2d 1251.

{¶ 10} The trial court found that appellant had committed rape, in violation of R.C. 2907.02(A)(1)(b), which prohibits one from engaging in sexual conduct with another, not one's spouse, where the other person is less than 13 years of age. Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 11} Although appellant mentions sufficiency of evidence for the rape conviction, he does not really argue the point. The evidence is clearly sufficient to support a finding that appellant committed rape. The victim's testimony, if believed, established that appellant put his finger about an inch into the anus of the victim. Instead, appellant's primary argument under the first assignment of error is that his adjudication as delinquent for committing rape was against the manifest weight of the evidence.

{¶ 12} With regard to a manifest-weight-of-the-evidence claim, an appellate court must review the entire record to determine whether the state has met its burden of persuasion. The court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The power to reverse on manifest weight of the evidence should be used only in exceptional circumstances when "the evidence weighs heavily against the conviction." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 13} Appellant argues that the evidence against him, which he describes as "the uncorroborated testimony of an eleven-year-old boy, who said he 'felt' something like 'going up his bottom' *while he was asleep*, and apparently and immediately 'woke up' to find no one doing anything" is "simply not worthy of such a serious finding." Essentially, appellant's argument goes to the credibility of the victim's testimony.

{¶ 14} Despite the fact that an appellate court weighs the evidence and considers the credibility of the witnesses in a manifest-weight argument, an appellate court must bear in mind the trier of fact's superior, firsthand perspective in judging the demeanor and credibility of the witnesses. *State v. Drayer*, 159 Ohio App.3d 189, 2004-Ohio-6120, 823 N.E.2d 492. An appellate court is ill suited to assess witness credibility, as the demeanor and attitude of witnesses do

not translate well into the written record. See *In re Wolfe* (Feb. 16, 2001), Greene App. No. 2000–CA–60, 2001 WL 128884.

{¶ 15} We find the wisdom of such deference is particularly evident in cases involving child witnesses and particularly in cases involving a young witness who must testify to matters of a sensitive nature in sex-abuse cases. The trial court was in a superior position to determine the maturity, sincerity, and believability of the child witness in this case. Moreover, the issues that according to appellant reflect on the credibility of the victim, such as the fact that the child said he was "asleep when he felt something," are claims that more reflect the imprecise language used by the child than issues related to the believability of the witness. The child clearly testified that he felt something go in his anal cavity about an inch and that he believed that appellant was responsible. Despite the imprecise nature of the child's testimony regarding the entire set of events, we cannot say that the trier clearly lost its way in arriving at a decision. Appellant's first assignment of error is overruled.

### Delinquency Finding Based on Gross Sexual Imposition

{¶ 16} In his second assignment of error, appellant argues that the trial court erred in adjudicating him a delinquent child based on a determination that he committed gross sexual imposition. He argues that the adjudication was based on evidence that was "inconsistent" and "improbable, if not impossible," that he "almost" engaged or "tried" to engage in certain activity, without any evidence of purpose. As in his first assignment of error, appellant argues that the adjudication was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 17} Under R.C. 2907.05(A)(4), gross sexual imposition comprises the elements of having sexual contact with another, not the spouse of the offender, when the other person is less than 13 years of age. Sexual contact is defined as the "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 18} In this assignment of error, appellant argues that the evidence failed to establish an essential element of the offense because there was no evidence of sexual contact. Specifically, he contends that the evidence does not show that the act was performed with the purpose of "sexually arousing or gratifying either person." He contends that there was insufficient proof that the purpose was sexual gratification.

{¶ 19} While purpose of sexual arousal or gratification is an essential element of gross sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification. *In re Anderson* (1996), 116

Ohio App.3d 441, 444, 688 N.E.2d 545. Whether touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact. Id. at 443–444, 688 N.E.2d 545; *State v. Mundy* (1994), 99 Ohio App.3d 275, 289, 650 N.E.2d 502. The trier of fact may infer what the defendant's motivation was in making the physical contact with the victim. Id.; *State v. Cobb* (1991), 81 Ohio App.3d 179, 610 N.E.2d 1009. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." Id. at 185, 610 N.E.2d 1009. While touching itself is not sufficient for a conviction, the act of touching may constitute strong evidence of intent. *Anderson*, 116 Ohio App.3d at 444, 688 N.E.2d 545.

{¶ 20} In this case, the victim testified that appellant pulled down his pants, that appellant did not have permission, and that he did not want appellant to do so. The victim indicated that appellant was trying to "stick a finger in his butt." He stated that appellant did not say anything when he was performing the act, but "just started laughing." We find that based on the evidence presented, the juvenile court could reasonably conclude that appellant was motivated to initiate this nonconsensual touching based on a desire for sexual arousal or gratification. In making this determination, we recognize that the juvenile court was in a superior position to consider "the type, nature and circumstances of the contact, along with the personality of the defendant." *Anderson*, 116 Ohio App.3d at 444, 688 N.E.2d 545. Although appellant appears to argue that the laughing evidenced a "childhood prank" rather than sexual contact, we disagree. Laughing while touching an erogenous zone does not necessarily lead to the conclusion that the contact was nonsexual in nature, nor does it diminish the seriousness of the act.

{¶ 21} Therefore, we find that appellant's adjudication as delinquent for committing gross sexual imposition was based on sufficient evidence and was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.

## Polygraph as a Condition of Probation

{¶ 22} In his third assignment of error, appellant contends that the trial court erred in imposing the requirement that he submit to and pass a polygraph test as part of his probation. The trial court's dispositional order states, "The child shall submit to a full disclosure polygraph and such further maintenance polygraphs as may be directed by his probation officer/therapists." The Probation Terms document prepared by the court stated that appellant "shall submit to and pass polygraphs as directed."

{¶ 23} Appellant asserts various arguments under this assignment of error, all alleging that the trial court erred in imposing the polygraph condition. He first argues that this requirement "requires an 11–year–old to be grilled and scrutinized not just by a therapist or a probation officer, but by a polygraphist, whose subjective opinion of a 'lie' is the equivalent of a violation of probation." He further argues that the term may be unenforceable because the results are inadmissible in court and the procedure is unreliable. Finally, appellant argues that the polygraph requirement violates his Fifth Amendment rights.

{¶ 24} Courts throughout the nation have taken widely varying stances on the admissibility of polygraph results during court proceedings. See *Lee v. Martinez* (2004), 136 N.M. 166, 96 P.3d 291, 310–313 (discussing the varying approaches taken to admissibility of polygraph results in state and federal courts). In Ohio, evidence regarding the results of polygraph tests is admissible in limited circumstances. Specifically, it is admissible in criminal proceedings for corroboration or impeachment purposes when the parties stipulate to its admissibility and other factors are met. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318. However, the issue of admissibility of test results in a criminal proceeding is a separate and distinct issue from the question whether a polygraph is a reasonable condition of probation. Despite inadmissibility of polygraphs as evidence in court proceedings, other courts have recognized that a polygraph is a useful tool in investigation and rehabilitation and treatment of offenders. *Oregon v. Graville* (1986), 82 Or.App. 253, 728 P.2d 561; *California v. Miller* (1989), 208 Cal.App.3d 1311, 256 Cal.Rptr. 587; *State v. Riles* (1998), 135 Wash.2d 326, 957 P.2d 655; *State v. Jacobsen* (1999), 95 Wash.App. 967, 977 P.2d 1250; *Ex Parte Renfro* (Tx.App.1999), 999 S.W.2d 557; *United States v. Wilson,* (C.A.6, 1998), 172 F.3d 50 (Table), 1998 WL 939987.

{¶ 25} We begin our analysis with the question whether a polygraph requirement is a reasonable condition of probation for a juvenile who has committed crimes of a sexual nature. In Ohio, a trial court has broad discretion in setting the conditions of probation. *State v. Jones* (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469. The conditions of probation must be related to the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior. Id. In the context of juvenile offenders, the Ohio Revised Code provides that probation officers "shall use all suitable methods to aid persons on community control and to bring about improvement in their conduct and condition." R.C. 2151.14.

{¶ 26} A court must consider several factors in imposing appropriate probation conditions on an offender. *Lakewood v. Hartman* (1999), 86 Ohio St.3d 275, 714 N.E.2d 902. Specifically, the court should consider whether the condi-

tion (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime committed, and (3) is related to conduct that is criminal or is reasonably related to future criminality and serves the statutory ends of probation. *Jones,* 49 Ohio St.3d at 53, 550 N.E.2d 469. Although juvenile courts may prescribe unique probation conditions in order to deal with the problems associated with juveniles, probation conditions must still somehow relate to the offense for which the juvenile is charged. *In re Miller* (1992), 82 Ohio App.3d 81, 85, 611 N.E.2d 451.

{¶ 27} The polygraph has been generally accepted as a useful tool in the treatment and rehabilitation of sex offenders. See *Polygraph Testing Leads to Better Understanding Adult and Juvenile Sex Offenders,* 65–DEC Fed. Probation 8, 2001. In *State v. Davis* (Dec. 1, 1997), Clermont App. No. CA97–03–031, 1997 WL 746064, this court recognized that requesting participation in a polygraph examination is a reasonable request for a person on probation for a sexual offense, even if the probation order does not include the condition. Likewise, other state and federal courts have recognized that polygraph testing is a reasonable condition of probation, particularly when the offender has committed a sex offense. *Ex Parte Renfro* (Tx.App.1999), 999 S.W.2d 557; *United States v. Wilson* (C.A.6, 1998), 172 F.3d 50, 1998 WL 939987; *California v. Miller* (1989), 208 Cal.App.3d 1311, 256 Cal.Rptr. 587; *State v. Riles* (1998), 135 Wash.2d 326, 957 P.2d 655.

 {¶ 28} Because it is reasonably related to rehabilitating the offender, has a relationship to the crime committed, and serves the statutory ends of probation, we continue to find that submission to a polygraph examination is a reasonable requirement of probation.

{¶ 29} Appellant appears to argue that even if valid, the polygraph requirement in this case violates his Fifth Amendment rights. He cites a document containing the terms of the polygraph examination stating that "any lie" told "during any phase of the procedure, including interview or charting process is an automatic failure of the entire process." Appellant contends that because the terms of probation require him to submit to *and pass* polygraph tests, if he invokes his Fifth Amendment rights, he will be determined to have failed the exam and his probation will be revoked. We disagree.

 {¶ 30} The United States Supreme Court has previously held that a general requirement to appear at probation interviews and answer questions truthfully did not transform voluntary statements into compelled ones in violation of Fifth Amendment rights. *Minnesota v. Murphy,* (1984), 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409. A probationer is compelled in violation of the Fifth Amendment only if he is required to answer despite a claim of privilege. Id.

Using this same logic, several courts have held that the requirement that a probationer answer polygraph questions truthfully does not violate a probationer's Fifth Amendment rights. *United States v. Lee* (C.A.3, 2003), 315 F.3d 206; *United States v. York* (C.A.1, 2004), 357 F.3d 14; *Oregon v. Tenbusch* (1994), 131 Or.App. 634, 886 P.2d 1077. Requiring a probationer to answer polygraph questions truthfully does not preclude the invocation of the Fifth Amendment unless the conditions of probation prohibit raising the privilege. Id. at 1082. When the overriding focus of the polygraph requirement is truthfulness, the requirement does not foreclose a probationer's right to object to incriminating statements. Id. at 1082–1083. The Fifth Amendment is violated only when the probationer has no choice and is required to give information or have his probation revoked. See *Oregon v. Gaither* (2004), 196 Or.App. 131, 100 P.3d 768 (statements made in polygraph and to probation officer regarding other criminal acts should have been suppressed in case involving charges on those acts when it was clear that if the probationer failed to answer a question, his probation would be revoked).

{¶ 31} As mentioned above, the terms of appellant's probation require him to "submit to and pass polygraphs as directed." Appellant appears to argue that the requirement of passing means that he cannot refuse to answer a question. The document discussing the terms of the polygraph itself states that the purpose is "to assist the offender in his/her ongoing treatment and to assist in the prevention of the reoccurrence against society through any criminal activity that would/will be considered by the offender." The first requirement states that the "sex offender shall **TAKE** and **PASS** a Full Disclosure Polygraph Examination. In order to *pass* the examination the offender has to be completely truthful in each and every question asked during the process by the Polygraphist."

{¶ 32} The polygraph requirements then state the language quoted by appellant above: "One lie concerning any question asked during any phase of the procedure, including interview or charting process is an automatic failure of the entire process." The remainder of the document echoes the requirement of complete truthfulness as a means of engaging in meaningful treatment and repeats that lying is a failure of the process. It does not, however, condition passing on any waiver of appellant's Fifth Amendment rights. Instead, the focus is on honesty and truthfulness. Because nothing in the terms of appellant's probation or the polygraph requirements prohibits him from raising a valid Fifth Amendment claim, we find that the polygraph requirement is not an unconstitutional infringement on his Fifth Amendment rights.

{¶ 33} Finally, we disagree with appellant's argument that he will be required to answer questions on any subject, such as whether he "cheated on a test at school," "watched an R-rated movie," "stole a piece of gum at the store,"

or "had bad thoughts about other kids." Even if a condition requiring a polygraph is not explicitly limited in the court's order, the scope may be implicitly limited within the context of the entire order. *United States v. Lee* (C.A.3, 2003), 315 F.3d 206; *Washington v. J.W.* (2004), 123 Wash.App. 1035; *Washington v. Combs* (2000), 102 Wash.App. 949, 10 P.3d 1101; see, also, *California v. Rizzo* (Cal.App.2004), 2004 WL 2341890 (sentencing order was modified to limit the polygraph condition to the crime for which defendant was convicted and to a sex-offender surveillance program).

{¶ 34} In this case, the polygraph condition was required for treatment and monitoring appellant's behavior in the commission of sex offenses and is implicitly limited to questions arising within those contexts. Because we find that the polygraph requirement was a valid condition of appellant's probation, appellant's third assignment of error is overruled.

Judgment affirmed.

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.