The State of Ohio, Appellee, v. Lee, Appellant.

[Cite as *State v. Lee,* 111 Ohio St.3d 361, 2006-Ohio-5849.]

(No. 2005–0855—Submitted October 17, 2006—Decided November 29, 2006.)

In re D.S.

[Cite as *In re D.S.,* 111 Ohio St.3d 361, 2006-Ohio-5851.]

(No. 2005–0992—Submitted March 14, 2006—Decided November 29, 2006.)

Lanzinger, J.

{¶ 1} The issue presented in this case is whether a juvenile court may require a child who was found delinquent because of committing crimes of a sexual nature

to submit to "full disclosure" polygraph examinations as a condition of community control. We are also asked to examine the extent to which such a requirement implicates the rights of a child under the Fifth and Fourteenth Amendments to the United States Constitution. We hold that evidence must support the use of a polygraph for a particular juvenile before it is a reasonable community-control condition and that compelled self-incriminating statements are prohibited under the Fifth and Fourteenth Amendments.

## Facts

{¶ 2} Appellant, D.S., a learning-disabled 11–year–old, was adjudicated as a delinquent child for two separate crimes: rape in violation of R.C. 2907.02(A)(1)(b) and gross sexual imposition in violation of R.C. 2907.05(A)(1). A friend of D.S., another 11–year–old boy, had been on a sleepover at D.S.'s home, and D.S.'s parents had allowed the boys to watch the Playboy Channel. While the victim was sleeping, D.S. inserted his finger into the victim's anus. During a separate sleepover involving a different boy, D.S. attempted the same type of activity.

{¶ 3} As a result of D.S.'s delinquency adjudication, the juvenile court placed him on community control. The dispositional entry of the Warren County Juvenile Court states that the court had received recommendations from the Warren County Clinical Committee and Warren County Children Services Board. Among the 12 conditions within the dispositional entry is "The child shall submit to a full disclosure polygraph and such further maintenance polygraphs as may be directed by his probation officer/therapists." D.S. was also notified that he was placed on "intensive probation" and signed an acknowledgement that he had additional binding terms of probation in that he "(1) shall attend and engage in sex offender treatment, (2) shall cooperate with case management services of Coordinated Care Team, (3) shall be supervised at all times (line-of-sight) when in the presence of other children, and (4) shall submit to and pass polygraphs as directed."

{¶ 4} As part of his appeal to the Twelfth District Court of Appeals, D.S. argued that the polygraph requirement was both unreasonable and a violation of his constitutional rights. The court of appeals affirmed, holding that the polygraph was a reasonable tool in the treatment and rehabilitation of juvenile sex offenders and as a community-control condition did not prohibit D.S. from exercising his Fifth Amendment rights.[1]

---

1. The court of appeals also rejected arguments that the delinquency findings were based on insufficient evidence and against the manifest weight of the evidence. 160 Ohio App.3d 552, 2005-Ohio-1803, 828 N.E.2d 143, at ¶ 15 and 21.

{¶ 5} The matter is before this court on the acceptance of a discretionary appeal on the following proposition: "A dispositional term for a delinquent child that requires the child to submit to, not refuse to answer any questions during, and pass a polygraph examination on demand is an unreasonable probation term and violates the child's constitutional rights."

## Legal Analysis

{¶ 6} Pursuant to R.C. 2152.19(A)(4), a juvenile court has broad discretion to craft an appropriate disposition for a child adjudicated delinquent. The court may place the child on community control "under any sanctions, services, and conditions that the court prescribes." Nevertheless, R.C. 2152.01(B) provides that dispositions must be "reasonably calculated" to achieve certain statutory purposes. Those purposes are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A). Accordingly, a juvenile court must consider those purposes in determining which conditions of probation to impose in crafting a community-control sanction. The court's disposition will be upheld unless there has been an abuse of discretion.

### *Reasonableness of the Polygraph Condition*

{¶ 7} In this case, the juvenile court ordered D.S. to submit to and pass a "full disclosure polygraph and such further maintenance polygraphs as may be directed by his probation officer/therapists." D.S. asserts that this requirement is impermissible because the condition does not reasonably advance statutory purposes and because the polygraph requirement is unduly broad so as to impinge upon his constitutional rights. The state responds, relying for the most part on cases involving adult offenders, that full-disclosure polygraphs are common in the treatment of sex offenders.

{¶ 8} Yet juveniles are not adults. When holding that the death penalty was unconstitutional for those under 18 years old, the United States Supreme Court noted three distinctions separating juveniles from adult offenders:

{¶ 9} "First, * * * '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.' *Johnson* [*v. Texas* (1993), 509 U.S. 350] at 367 [113 S.Ct. 2658, 125 L.Ed.2d 290] * * *.

{¶ 10} "The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure.

*Eddings* [*v. Oklahoma* (1982), 455 U.S. 104] at 115 [102 S.Ct. 869, 71 L.Ed.2d 1]. ('[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage'). This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment.* * *

{¶ 11} "The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed." *Roper v. Simmons* (2005), 543 U.S. 551, 569–570, 125 S.Ct. 1183, 161 L.Ed.2d 1.

{¶ 12} With these distinctions in mind, we should evaluate the polygraph condition imposed upon this 11–year–old offender.

{¶ 13} We have not adopted the unrestrained use of polygraph results at trial, and polygraphs themselves remain controversial.[2] Only if there is a stipulation between the parties do we allow the admission of polygraph results at trial, and then for corroboration or impeachment only. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318. The state argues that the instant case involves an entirely different issue—the efficacy of polygraph testing in rehabilitating a juvenile sex offender. The state cites studies that evaluated the use of polygraphs to treat sex offenders. The studies cited by the state, however, do not discuss the use of polygraphs with a learning-disabled 11–year–old. Even with adult sex offenders, polygraph use is not always part of the therapeutic treatment.

{¶ 14} There is ongoing debate about the success of polygraph use with juvenile sex offenders. See, e.g., Victor I. Vieth, When the Child Abuser Is a Child: Investigating, Prosecuting and Treating Juvenile Sex Offenders in the New Millennium (2001), 25 Hamline L.Rev. 47, 71–76. One study suggests that truthfulness is important in the rehabilitation of a person who has committed crimes of a sexual nature and that a polygraph is a useful tool in testing the veracity of a probationer's self-reporting. Jan Hindman and James M. Peters, Polygraph Testing Leads to Better Understanding Adult and Juvenile Sex Offenders (2001), 65–DEC Fed. Probation 8.

{¶ 15} We are unpersuaded, however, that polygraphs should be used indiscriminately as a tool for juvenile community control. At the very least, before a polygraph can be considered to be a reasonable probationary condition there must be a showing that a polygraph is needed for therapeutic reasons in a

---

2. In *United States v. Scheffer* (1998), 523 U.S. 303, 310–312, 118 S.Ct. 1261, 140 L.Ed.2d 413, the United States Supreme Court noted the disagreement among state and federal courts concerning both the admissibility and the reliability of polygraph evidence. "Whatever their approach, state and federal courts continue to express doubt about whether such evidence is reliable." Id. at 312, 118 S.Ct. 1261, 140 L.Ed.2d 413.

particular case, that is, for the treatment and monitoring of the juvenile's behavior. The juvenile court judge may then select the condition on a case-by-case basis, based upon advice of a therapist or other relevant expert.

{¶ 16} Probationary conditions are to be related to the circumstances of the offense. See, e.g., *State v. Jones* (1990), 49 Ohio St.3d 51, 550 N.E.2d 469. In the instant case, the recommendation to the court was simply boilerplate language, rather than a rationale for adding a polygraph condition for D.S.'s community control. No witness specifically asked for a polygraph to be used with D.S., and there is no evidence that it would serve as a therapeutic tool for him. It is not "commensurate with" the 11–year–old's conduct here to require multiple polygraph examinations when nothing showed the court that even one polygraph was needed. R.C. 2152.01(B). In fact, the record does not show that D.S.'s truthfulness was a concern, as there is no evidence that he ever lied about the offense. Consequently, there is no evidence in the record that a full-disclosure polygraph would serve any of the statutory purposes of R.C. 2152.01(A).

### Constitutional Concerns

{¶ 17} Even though they are labeled "civil," juvenile delinquency proceedings feature inherently criminal aspects that cannot be ignored. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 26. Moreover, as we have recognized, constitutional safeguards, including Fifth Amendment protection, still apply to juvenile delinquency proceedings. *In re Anderson* (2001), 92 Ohio St.3d 63, 66, 748 N.E.2d 67, citing *In re Gault* (1967), 387 U.S. 1, 31–57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (holding that various Fifth and Sixth Amendment protections apply to juvenile proceedings).

{¶ 18} D.S. maintains that even if the polygraph requirement were statutorily valid, it violates his right not to incriminate himself under the Fifth and Fourteenth Amendments to the United States Constitution. D.S. emphasizes that the juvenile court ordered "full disclosure" polygraph testing, which means, according to the state, that "the offender is expected to disclose the full extent of the offender's offense and the offender's full history relating to sexually illegal and deviant behaviors." The written rules of the polygraph program explain that in order to pass the examination, "the offender has to be completely truthful in each and every question asked during the process by the Polygraphist." Although not specifically discussing waiver of the Fifth Amendment right against self-incrimination, the order could be interpreted to mean that if D.S. refused to answer a question, an automatic violation of community control has occurred, since he has failed to "submit" to the exam as ordered. This interpretation is incorrect. The polygraph order cannot compel incriminating statements.

{¶ 19} The Fifth Amendment prohibits compelling a person on community control who claims privilege to give answers that might incriminate him in future criminal proceedings. *Minnesota v. Murphy* (1984), 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409. The polygraph order does not eliminate D.S.'s rights against self-incrimination, and thus he may assert them before giving answers that might incriminate him. D.S. does not allege that he has been compelled, as yet, to answer incriminating questions or that a claim of privilege would, in fact, be disregarded by the court or polygraph examiner. He may challenge as inadmissible in any future criminal proceeding, including at a hearing on an alleged community-control violation, any incriminating statement he may have been compelled to make in response to a polygraph test question. Because the disposition order does not prohibit D.S. from raising his Fifth Amendment privilege, he is able only to speculate over future constitutional violations.

{¶ 20} In conclusion, we hold that evidence must support the use of a polygraph for a particular juvenile before it is a reasonable community-control condition. We therefore reverse the judgment of the court of appeals and remand to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., RESNICK and O'CONNOR, JJ., dissent.

---

**O'CONNOR, J., dissenting.**

{¶ 21} I dissent.

{¶ 22} Despite the ongoing legal debate over the admissibility of polygraph evidence, an array of federal and state courts recognize that polygraph testing may be a viable tool in the rehabilitation, treatment, and monitoring of sex offenders. The trial and appellate courts in this case also found that polygraph testing was reasonably related to the offenses committed by this juvenile, as well as to the juvenile's rehabilitation and probation. Given those findings and the broad discretion afforded to trial courts in setting terms of probation, I would affirm the decision of the court of appeals insofar as it concluded that the use of polygraph testing may be imposed as a requirement of probation.

MOYER, C.J., and RESNICK, J., concur in the foregoing dissenting opinion.

---

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant, D.S.

Rachel A. Hutzel, Warren County Prosecuting Attorney, and Joshua A. Engel and Mary K. Hand, Assistant Prosecuting Attorneys, for appellee, the state of Ohio.