[Cite as *State v. Herald*, 2016-Ohio-7733.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 4-16-09

    v.

JOHN T. HERALD,                        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 14-CR-11918

**Judgment Affirmed**

Date of Decision: November 14, 2016

APPEARANCES:

    *Clayton J. Crates* **for Appellant**

    *Russell R. Herman* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant, John T. Herald ("Herald"), brings this appeal from the March 17, 2016, judgment of the Defiance County Common Pleas Court revoking Herald's community control and imposing a reserved aggregate prison term of seven-and-a-half-years for Herald's convictions of Burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, and Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree.

*Relevant Facts and Procedural History*

{¶2} On May 9, 2014, Herald was indicted for Burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree due to Herald having a prior Domestic Violence conviction, and Aggravated Menacing in violation of R.C. 2903.21(A), a first degree misdemeanor. Herald originally pled not guilty to the charges.

{¶3} On July 3, 2014, the State filed a motion for joinder requesting that the charges in this case be joined with a Retaliation charge in another case. That motion was granted.

{¶4} On July 17, 2014, a hearing was held wherein Herald agreed to plead guilty to the Burglary and Domestic Violence charges in this case, and the Retaliation charge in the separately indicted case. In exchange the State agreed to

dismiss the Aggravated Menacing charge in this case. The State also agreed to recommend that Herald be sentenced to four years of community control on the Burglary and Domestic Violence offenses with a reserved six-year prison term on the Burglary and an eighteen-month prison term on the Domestic Violence, which would be served consecutive to each other for an aggregate seven-and-a-half-year prison term in the event that community control was revoked. In addition, the State agreed to recommend that Herald be sentenced to one year in prison on the Retaliation charge in Herald's other case, with his community control on the charges in this case to begin once he was released from prison.

{¶5} The trial court conducted a Crim.R. 11 colloquy with Herald wherein Herald indicated that he understood the rights he was waiving, the consequences of his plea, and the potential penalties he was facing. Herald seemed briefly confused by the court's indication that the court did not have to follow the parties' sentencing recommendation, but the court made it clear that it did not have to follow the recommendation and Herald elected to plead guilty pursuant to the oral plea agreement.

{¶6} The court had the State recite a factual narrative related to the charges. In the narrative, the State indicated that Herald unlawfully entered the private residence of his ex-girlfriend, who was also the mother of his child, despite previously being told not to be there. The State indicated that Herald was

intoxicated and that he shoved the victim down, and that he had a prior conviction for Domestic Violence.[1]

{¶7} After narrating the factual basis for the charges, the court asked defense counsel whether the operative facts were correct and defense counsel stated that "[t]he facts are debatable, but I'm sure the prosecution can put together evidence that could convince a jury, a trier of fact." (July 17, 2014, Tr. at 15). The court then asked Herald whether the facts happened as alleged and he responded, "[t]o a degree." (*Id.*) However, Herald stated that he admitted to the essential elements of each of the offenses, and that it was his intention to plead guilty per the plea agreement.

{¶8} The court accepted Herald's pleas as knowingly, intelligently, and voluntarily entered and found Herald guilty.

{¶9} On August 28, 2014, Herald's sentencing hearing was held. At sentencing the trial court recited the plea arrangement, stating that the parties recommended that Herald would be placed on community control for the Burglary and Domestic Violence convictions upon being released from his one-year prison term for Retaliation in the separate case. The court indicated that the parties recommended that if Herald violated his community control he would be subject to an aggregate seven-and-a-half-year prison term.

---

[1] As it relates to the Retaliation, which is not before us, the State indicated that Herald made specific threats of violence to kill the baby of a police officer.

{¶10} The court then asked the parties to be heard, and defense counsel indicated that the sentence recommendation was "the agreed disposition." (Aug. 28, 2014, Tr. at 3-4). Herald addressed the court stating that he understood what he did was wrong and that he was willing to take responsibility for it. He urged the court to adopt the parties' sentencing recommendation.

{¶11} The court stated that Herald had an extensive criminal history and told Herald that "it's highly unlikely that you're going to be able to succeed on community control." (Aug. 28, 2014, Tr. at 4). Herald stated that he believed that he could succeed on community control and that he understood the consequences if he did not comply with his terms of community control.

{¶12} The same date as Herald's sentencing hearing, a "Community Control Agreement and Order" was filed, indicating the terms and conditions of Herald's community control. Among the conditions were for Herald not to possess or use drugs, and that he have a midnight curfew. Specific conditions were also added that Herald should not be in any bars or taverns and that he should not possess or consume any alcohol. (Doc. No. 23).

{¶13} An entry memorializing Herald's sentence was filed September 16, 2014.

{¶14} The next relevant activity in this case occurred December 14, 2015, when the State filed a motion to revoke Herald's community control, contending

that he had violated multiple terms of his community control. Specifically, the State indicated that Herald was not home by his curfew one night and that on or about December 4/5, 2015, Herald was at the Power Dam Bar and was consuming alcoholic beverages.

{¶15} On December 14, 2015, the trial court held a hearing on the motion to revoke Herald's community control. Herald waived his right to counsel[2] and indicated that he was "obviously * * * guilty" and that he fully admitted to the violations. (Dec. 14, 2015, Tr. at 3). The State provided a narrative of the incident, indicating that not only was Herald at a bar, consuming alcohol, and out past his curfew, but that he also was involved in a fight at the bar.[3]

{¶16} The court then accepted Herald's admissions to his community control violations and asked the State for its recommendation as to disposition. At that time the State recommended that the disposition be delayed to see if Herald could comply with the conditions of supervision, and that any "recommendation would be dependent upon that. We would likely be recommending that he not be revoked, possibly some additional specials if he commits no new violations. But it would depend upon what his situation was at that time." (Dec. 14, 2015, Tr. at 11).

---

[2] A written waiver of counsel was filed in the record.
[3] The State indicated it would likely not be pursuing charges from the fight even though the victim required stitches because the victim was uncooperative.

{¶17} The court then again reiterated that Herald had a lengthy criminal history and that he made a mistake being in the bar that evening. Herald requested leniency, indicating that he had a job and his own residence and was doing better. Ultimately the court continued disposition for Herald's admitted violations for approximately two months. An entry reflecting what transpired at the hearing was filed December 18, 2015.

{¶18} The case was called for a dispositional hearing on February 10, 2016. At the hearing, the State indicated there were additional issues that had arisen since the last hearing, such as Herald testing positive for marijuana and a complaint being investigated that Herald committed sexual imposition against a female inmate. The State indicated it had not filed new allegations of community control violations yet based on the new issues. At that time, the State requested that the court revoke Herald's community control and impose the reserved prison term.

{¶19} Herald addressed the court, admitting to smoking the marijuana, but he denied the sexual imposition allegation, stating that he had told the prosecutor and a detective that he would take a polygraph test "any day of the week. I will pay for it. I'll do it right now." (Feb. 10, 2016, Tr. at 6). The court agreed to continue the dispositional hearing to allow Herald to undertake the polygraph examination that he requested, indicating that the State should prepare a stipulation that the results of the test would be admissible and the court could consider it.

{¶20} The final dispositional hearing was held March 14, 2016. At the hearing the court stated that Herald's polygraph test indicated that Herald was being deceptive. Herald denied that he failed the polygraph examination, and the court asked whether Herald saw on the front page of the report that it said Herald did not pass the polygraph examination. Herald responded that he saw it but it was not his understanding. However, the record does not contain any documentation related to the questions asked at the polygraph examination. Similarly, the record does not contain a copy of the results or any stipulation related to their admissibility.

{¶21} Despite the results of the polygraph examination that the court narrated, Herald still denied that the sexual imposition occurred and requested leniency from the court, asking that his community control be continued even though he had multiple other violations that he had readily admitted to. The State recommended that Herald's community control be revoked.

{¶22} The court recited Herald's lengthy criminal history, including the crimes Herald was currently on community control for. The court then revoked Herald's community control, and imposed the reserved prison terms, six years for the burglary and eighteen months for the Domestic Violence, to be served consecutive to each other, for an aggregate seven-and-a-half-year prison term. When Herald asked the court "why" the court would impose such a prison term, the court stated "[b]ecause you won't follow your rules of community control." (Mar.

14, 2016, Tr. at 13). The court added that Herald earned his prison terms by committing the offenses to which Herald pled guilty. At that time Herald attempted to contend that he never actually "burglarize[d] anything," despite already pleading guilty to the Burglary. (*Id*. at 13).

**{¶23}** A final judgment entry revoking Herald's community control and imposing the aggregate seven-and-a-half-year prison term was filed March 17, 2016. It is from this judgment that Herald appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY IMPOSING CONSECUTIVE SENTENCES WITHOUT MAKING APPROPRIATE FINDINGS PURSUANT TO §2929.14.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO CONSIDER APPLICABLE SENTENCING STATUTES.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT'S DECISION TO REVOKE APPELLANT'S COMMUNITY CONTROL CONSTITUTED AN ABUSE OF DISCRETION.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING THE PROSECUTOR TO CHANGE THE BARGAINED FOR RECOMMENDATION.**

**ASSIGNMENT OF ERROR 5**
**APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE STATE FAILED TO COMPLY WITH THE DUE PROCESS REQUIREMENTS OF COMMUNITY CONTROL REVOCATION PROCEEDINGS.**

**ASSIGNMENT OF ERROR 6**
**APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT FAILED TO MAKE WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

**{¶24}** We elect to address some of the assignments of error together, and out of the order in which they were raised.

*Third Assignment of Error*

**{¶25}** In Herald's third assignment of error, he argues that the trial court abused its discretion by revoking his community control. Specifically, Herald argues that it was error for the trial court to place any reliance on the polygraph examination when determining Herald's disposition for his community control violations, and that the overall circumstances did not support revoking his community control.

**{¶26}** At the outset, we note that community control-revocation and dispositional hearings are not subject to the rules of evidence. Evid.R. 101(C)(3); *State v. Ohly*, 6th Dist. Erie No. E-05-052, 2006-Ohio-2353, ¶ 21. "The rationale for the exception is that, since a probation revocation hearing is an informal proceeding, not a criminal trial, the trier-of-fact should be able to consider any

-10-

reliable and relevant evidence to determine whether the probationer has violated the conditions of his probation." *Columbus v. Bickel*, 77 Ohio App.3d 26, 601 N.E.2d 61 (10th Dist.1991).

{¶27} Nevertheless, in order to find that an offender violated the terms of his community control at a community control-revocation hearing, the State must show "substantial evidence." *State v. Boykins*, 3d Dist. Marion No. 9-14-28, 2015-Ohio-1341, ¶ 20, citing *State v. McKeithen*, 3d Dist. Marion No. 9-08-29, 2009-Ohio-84, ¶ 6, citing *State v. Ryan*, 3d Dist. Auglaize No. 14-06-55, 2007-Ohio-4743, ¶ 7. "Substantial evidence is akin to a preponderance-of-the-evidence burden of proof." *State v. Burdette,* 5th Dist. Morrow No. 10–CA–9, 2011–Ohio–4425, *4, citing *State v. Ohly,* 6th Dist. Erie No. E-05-052, 2006–Ohio–2353, ¶ 18. However, "[s]ubstantial evidence is considered to consist of more than a mere scintilla of evidence, but somewhat *less* than a preponderance." (Emphasis added.) *Burdette,* citing *State v. Gomez,* 11th Dist. Lake No. 93–L–080, 1994 WL 102230, *4 (Feb. 18, 1994), citing *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966) and *Marker v. Finch,* 322 F.Supp. 905, 910, fn. 7 (D.Del.1971).

{¶28} The decision of a trial court finding a violation of community control will not be disturbed absent an abuse of discretion. *State v. Berry*, 3d Dist. Defiance No. 4-12-04, 2012-Ohio-4660, ¶ 33, citing *State v. Ryan,* 3d Dist. Union No. 14-06-55, 2007-Ohio-4743 ¶ 7. A trial court abuses its discretion when it makes a decision

that is unreasonable, unconscionable, or arbitrary. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 34. A trial court's decision to revoke community control, even for a "minor" violation, is not an abuse of discretion. *See State v. South*, 3d Dist. Union No. 14-07-40, 2010-Ohio-983, ¶ 9.

**{¶29}** In this case there were a number of general and specific provisions contained in Herald's community control. Herald's general provisions required, *inter alia*, that Herald obey all laws and that he abide by a midnight curfew unless his scheduled work hours ended after the stated curfew. Herald was also required not to possess any illegal drugs. In the specific conditions of Herald's community control, Herald was explicitly required not to enter *any bars or taverns* and not to consume or possess *any* alcoholic beverages.

**{¶30}** Herald readily admitted to *multiple* violations of his community control sanctions in this case. Herald admitted that he had been at a bar, that he had been drinking alcohol, and that he had been out past his curfew. All of these reasons support the trial court's decision finding Herald in violation of his community control.

**{¶31}** However, on appeal, Herald argues that the trial court improperly "based" its decision to *revoke* Herald's community control on the polygraph examination that Herald requested at his dispositional hearing and subsequently—apparently—failed. When Herald was before the court for his disposition, the State

brought to the court's attention that Herald failed a drug test and that Herald was being investigated for a sexual imposition of a female prisoner. While Herald admitted his marijuana use, he immediately denied the alleged sexual imposition and stated that he would willingly take a polygraph examination to disprove it.[4]

{¶32} The trial court delayed the dispositional hearing to allow Herald to undertake the polygraph examination that he requested, in what appears to be one last opportunity for Herald to establish some mitigating factors for his disposition for his violations. Herald's polygraph examination results apparently indicated that his responses were indicative of deception. The trial court ultimately revoked Herald's community control at the final disposition hearing.

{¶33} Herald now argues that the trial court improperly revoked his community control based on his polygraph examination results. Contrary to Herald's claim, when Herald asked why the trial court revoked his community control at the dispositional hearing, the trial court stated, "[b]ecause you won't follow your rules of community control." (Mar. 14, 2016, Tr. at 13). The trial court also cited Herald's lengthy criminal history before revoking his community control. The trial court did not specifically cite the polygraph examination as the reason Herald's community control was being revoked, rather it generally stated that Herald had not complied with community control.

---

[4] Neither the State nor the trial court mentioned a polygraph before Herald brought it up. Nevertheless, the trial court instructed the State to prepare stipulations to make the polygraph admissible.

{¶34} Nevertheless, Herald argues that *any* consideration of the polygraph examination here was improper. To support his claim that the trial court improperly relied on the polygraph examination in revoking his community control, Herald attempts to liken this case to the Supreme Court of Ohio's seminal decision in *State v. Souel*, 53 Ohio St.2d 123 (1978), wherein strict procedure was determined as to when polygraph examinations can be admitted into evidence *at trial*. In this case the polygraph examination is not being used against Herald at trial and he is not being prosecuted for any alleged offenses for which he took the polygraph examination. If he wanted to challenge the admissibility of any such statements he made during the polygraph examination at a subsequent prosecution for *that* offense, he would still be able to do so. *See In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, ¶ 16 (2006).

{¶35} Further, the rules of evidence are not even applicable at community control-revocation hearings and the standard of proof is substantially lower.[5] In addition, polygraph examinations have been found to be an acceptable tool of community control where the testing is related to a criminal defendant's treatment and supervision, even where polygraph examinations were *specifically required* to be undertaken. *See State v. May*, 8th Dist. Cuyahoga No. 97354, 2012-Ohio-2766, ¶ 37 (overruled on a separate issue in *State v Anderson*, 8th Dist. Cuyahoga No.

---

[5] Though we wish to emphasize that Herald was not being found *in violation* of his community control for failing the polygraph examination, it was merely being considered for disposition.

102427, 2016-Ohio-7044); *but see In re D.S.,* 111 Ohio St.3d 361, 2006–Ohio– 0992, ¶ 5 (wherein it was determined that requiring a *juvenile* to take a polygraph examination must be supported by the evidence as a juvenile is not a criminal).  Thus for all of these reasons we do not find *Souel* controlling here.

{¶36} Herald also cites an older decision out of the Ninth District Court of Appeals, *State v. Rooney*, 9th Dist. Summit No. 12052, 1985 WL 11040, wherein the Ninth District affirmed a trial court's suppression of evidence that a defendant involuntarily took a polygraph examination as a condition of his probation and defendant's deception in that polygraph examination was going to be used as the sole basis to find the defendant in violation of his probation.  *Rooney* is readily distinguishable from the case *sub judice*, because here Herald was already found in violation of his community control at the time any polygraph results were considered, and the polygraph was only considered here as giving Herald an opportunity to mitigate the circumstances before the trial court.  The apparent results of the polygraph examination in this case were not being used as any basis to find Herald *in violation* of his community control, let alone the *sole basis*, as it was in *Rooney*.  Moreover, Herald also undertook the examination voluntarily in this case. Thus we do not find these circumstances the same as *Rooney*.

{¶37} Finally, we would note that before Herald originally pled guilty to the Burglary and Domestic Violence charges, the trial court admonished Herald that,

even if the court accepted the parties' sentencing recommendation, based on his criminal history it seemed unlikely Herald would succeed on community control. Herald stated that he believed that he could. Herald may feel that his community control violations were minor, but he was already getting a significant opportunity to be on community control at all given that he pled guilty to a second degree felony.

{¶38} In this specific instance we can find no error with the trial court's revocation of Herald's community control. Even disregarding everything related to the polygraph examination, the trial court still had multiple reasons for revoking Herald's community control, and it was specifically stated that Herald's community control was revoked for his general failure to comply. Therefore, Herald's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶39} In Herald's fourth assignment of error, he argues that the trial court erred by allowing the prosecutor to "change" his "bargained-for" recommendation at the dispositional hearing. Specifically, Herald argues that when he admitted his community control violations, the State indicated that it would "likely" be recommending that the trial court not revoke Herald's community control at the dispositional hearing. Herald likens the State's comment to that of a "plea agreement," claiming that the State breached said "plea agreement" when it

recommended that Herald's community control be revoked at the dispositional hearing.

{¶40} Herald's arguments in this assignment of error are wholly disputed by the record and are entirely without merit. After Herald admitted to multiple community control violations, the trial court asked the State what it would recommend for disposition. The prosecutor made the following statement.

> **[Prosecutor]: Your Honor what I indicated is the State would ask that the matter be continued for disposition. I'd like to look at the history a little bit further and review further with Mr. Elwood. But also give the Defendant an opportunity to begin some counseling, Mr. Elwood had recommended or directed him to begin participating in. So I indicated to him that *I would be requesting a continuance of the disposition to see if he can comply with all the conditions of his supervision, and then our recommendation would be dependent upon that*. We would likely be recommending that he not be revoked, possibly some additional specials if he commits no new violations. But it would depend upon what his situation was at that time.**

(Emphasis added.) (Dec. 14, 2015, Tr. at 11).

{¶41} Notably, nowhere in the preceding statement does the prosecutor make any type of binding promise to recommend that Herald remain on community control at the dispositional hearing. However, even if the prosecutor had made such a promise, the trial court was absolutely not bound by any such recommendation.

{¶42} Nevertheless, even though the trial court did not have to continue Herald's dispositional hearing as the State recommended, it did, continuing the case for approximately two months, allowing Herald an opportunity to demonstrate that

he could be successful on community control. In that time Herald managed to fail a drug test, which he admitted to, and there was an investigation related to a potential sexual imposition charge. While Herald argues that no new community control violations were specifically filed regarding those issues, the court indicated it was unnecessary based on Herald's past violations. The State then gave its recommendation that Herald's community control be revoked.

{¶43} The trial court, using its discretion, revoked Herald's community control. There was never any agreement between Herald and the State, and even if there was, Herald seems to clearly have violated the agreement by continuously not abiding by the terms of his community control. Therefore, Herald's argument that the State somehow altered a "bargained-for" recommendation is entirely inaccurate and without merit. Accordingly, his fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶44} In Herald's fifth assignment of error, he argues that his due process rights were violated by the State failing to comply with the requirements of community control revocation proceedings. Specifically, he argues that no community control violations were filed against Herald for his marijuana use or his alleged sexual imposition of a female inmate and that these potential violations were used against him.

{¶45} Notably, any reference to Herald's marijuana use and his potential sexual imposition of a female inmate were only made at Herald's dispositional hearing. The trial court never determined whether Herald violated his community control based on his marijuana use or the alleged sexual imposition. Rather, the trial court merely took these issues into account when determining Herald's disposition for the violations of community control to which Herald had already admitted. This Court has already determined that it is not reversible error for a trial court to consider such allegations during a dispositional phase of a community control revocation hearing. *See State v. Rose*, 3d Dist. Logan No. 8-02-14, 2002-Ohio-5136, ¶ 20; *State v. Patierno*, 3d Dist. Defiance No. 4-08-08, 2009-Ohio-410, ¶ 24; *State v. Hurley*, 3d Dist. Hardin Nos. 6-10-02, 6-10-03, 2010-Ohio-3668, ¶¶ 8-15. Thus Herald's argument is not well-taken and his fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶46} In Herald's sixth assignment of error, he argues that the trial court erred by failing to make written findings of fact and conclusions of law in revoking Herald's community control.

{¶47} To support his argument, Herald cites *State v. Delaney*, 11 Ohio St.3d 231 (1984), wherein the Supreme Court of Ohio stated that it did "not condone the use of oral 'explanations' in lieu of written statements detailing the basis for a trial court's determination in revocation proceedings[.]" *Delaney* at 235. However, the

Court continued by stating that written findings of fact and conclusions of law were immaterial since the appellant was adequately informed of the reasons for which his "probation" was being revoked on the record. *Id.*

{¶48} The preceding segment makes clear that the legal authority actually relied upon by Herald does not even adequately support his position. The Supreme Court of Ohio indicated only that it was more favorable if a trial court produced written findings of fact and conclusions of law when finding a violation, but it was not necessary so long as a defendant is adequately informed of the reasons his probation—now community control—is being revoked.

{¶49} Here, written violations were filed, a hearing was held, and Herald admitted to the violations. A factual basis of the violations was even presented and Herald gave his version of events. Herald was clearly apprised of why he was being found in violation of his community control in this case and the trial court made that clear. Therefore, Herald's sixth assignment of error is not well-taken, and is overruled.

*First and Second Assignments of Error*

{¶50} In Herald's second assignment of error, he argues that the trial court erred by failing to consider applicable sentencing statutes. In his first assignment of error, he argues that the trial court erred by failing to make appropriate consecutive sentences findings pursuant to R.C. 2929.14(C)(4).

{¶51} Revised Code 2953.08(D)(1) governs the appeal of jointly recommended sentences. It provides that "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." The Supreme Court of Ohio has held that "[o]nce a defendant stipulates that a particular sentence is justified, the sentencing judge need not independently justify the sentence." *State v. Porterfield,* 106 Ohio St.3d 5, 2005–Ohio–3095, at paragraph three of the syllabus. "The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate." *Id.* at ¶ 25. The Supreme Court of Ohio has recently specifically applied this concept to the findings required to impose consecutive sentences. *State v. Sergent*, Ohio Sup.Ct. Slip Opinion No. 2016–Ohio–2696.

{¶52} In this case the sentence was recommended by both the State and Herald, and was bargained-for in the plea agreement. Herald's counsel made this clear at the sentencing hearing. At the sentencing hearing, Herald's counsel stated that, "The disposition that the Court recited is the bargain for [sic] and the agreed disposition. The inclusion of SEARCH was actually the request of the Defendant who felt that he needed some structure getting his life straighten out [sic], and so we would certainly recommend that the Court accept the prosecutor's disposition

recommendation." (Aug. 28, 2014, Tr. at 3-4). The defendant himself then also urged the court to accept the sentencing recommendation stating, "I just ask that, you know, you respect the recommendation of the prosecutor." (*Id.*) The trial court ultimately imposed the jointly recommended sentence. In doing so, the trial court specifically stated that in the event the prison terms needed to be imposed, they would be imposed consecutively and that "[c]onsistent with the plea arrangement * * * that entire seven and a half year term will be reserved." (*Id.* at 6).

{¶53} As the sentence in this case was jointly recommended by the parties and imposed by the trial court, we need only review if the sentence is authorized by law.[6] The six-year prison sentence for Burglary and the eighteen-month prison term for Domestic Violence both fall within the statutory range. In the event of a community control violation, Herald was aware that he was facing an aggregate seven-and-a-half-year prison term as indicated in the "Community Control Agreement and Order," which was signed by the parties and the judge. Since the term was authorized by law, any claims that the trial court did not consider specific sentencing statutes are without merit, and Herald's first and second assignments of error are overruled. *See State v. Sergent*, Ohio Sup.Ct. Slip Opinion No. 2016–

---

[6] This case is readily distinguishable from *State v. Kegley*, 3d Dist. Crawford No. 3-15-20, 2016-Ohio-2983, ¶ 2, wherein the plea agreement and sentence only stated that the defendant could be "subject to" certain maximum consecutive prison terms, not that such terms would necessarily be imposed.

Ohio–2696; *State v. White*, 2d Dist. Greene No. 2015-CA-37, 2016-Ohio-4726, ¶ 13; *State v. Dennison,* 10th Dist. Franklin No. 05AP–124, 2005–Ohio–5837, ¶ 9.

{¶54} Having found no error prejudicial to Herald in the particulars assigned, his assignments of error are overruled and the judgment of the Defiance County Common Pleas Court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**