JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Anthony Johnson, appeals his conviction from the Cuyahoga County Court of Common Pleas. For the reasons set forth below, we affirm in part, vacate in part, and remand.
 {¶ 2} Johnson was charged with two counts of felonious assault with firearm specifications, one count of domestic violence, one count of having a weapon under disability, and attempted murder with firearm specifications. Johnson pled not guilty, and a jury trial ensued.
 {¶ 3} At trial, Theresa Lawson testified that she and Johnson are cousins. On December 5, 2006, Lawson was at the home of Johnson and his wife, the victim, Virginia Ward. Lawson testified that she and the victim were watching television, drinking, and "chilling" all day. Lawson testified that she slept on the couch because Johnson had taken her car. The victim was asleep on the couch as well.
 {¶ 4} Lawson testified that Johnson came home, snatched the blanket off the victim, and punched her three times in the leg to wake her up. Johnson then told the victim to get up and get out. The victim got up, got dressed, and then left the house. The victim was walking in the snow when Lawson told her she would give her a ride.
 {¶ 5} Lawson testified that Johnson followed them out, opened the car door, and "popped [the victim] in the head with a gun, like three times, maybe more." *Page 2 
Johnson told the victim to take the baby. Lawson testified that while Johnson and the victim were fighting, she jumped out of the car to go get the baby.
 {¶ 6} Lawson returned with the baby, and they left. Lawson testified that the victim's head was bleeding and she needed the attention of paramedics. The victim used Lawson's cell phone to call 911. Lawson drove the victim to a gas station to meet with the police. The victim was then taken to the hospital.
 {¶ 7} Dr. Rachedi, an emergency room doctor at Lutheran Hospital, testified that on December 5, 2006, she treated the victim, for a head injury. The victim indicated that she was hit in the head with the butt of a gun. The victim had a hematoma on her forehead that was three centimeters.
 {¶ 8} Officer Pfueffer testified that he responded to a call for a domestic situation where a woman had been pistol-whipped. When he arrived, he observed that the victim was very upset and had a knot on her head, which was bleeding. Officer Pfueffer testified that after speaking with the victim, he searched for Johnson and the gun. The gun was never recovered.
 {¶ 9} Johnson was found guilty of one count of felonious assault with firearm specifications, domestic violence, and having a weapon while under disability. Johnson was sentenced to a total of six years in prison. Johnson appeals, advancing three assignments of error for our review. His first assignment of error states the following: *Page 3 
 {¶ 10} "The conviction was not supported by sufficient evidence where the state failed to present evidence that Mr. Johnson used a deadly weapon."
 {¶ 11} Johnson argues that there is no evidence that he used a gun when he hit the victim. Also, he argues there is no evidence that whatever was used to hit the victim was capable of inflicting death.
 {¶ 12} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} Johnson was charged and convicted of felonious assault in violation of R.C. 2903.11(A)(2), which prohibits a person from knowingly causing or attempting to cause physical harm with a deadly weapon. "Deadly weapon" is defined as any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon. R.C. 2923.11(A).
 {¶ 14} A jury is "entitled to infer the deadly nature of an instrument from the facts and circumstances of its use." State v. McKnight (Feb. 5, 1996), Stark App. No. 1995CA00241. The test of a deadly weapon is whether it is capable of inflicting death, and the actual use of the weapon does not require the same means for which *Page 4 
it was designed. State v. Branche, Franklin App. No. 01AP-523, 2002-Ohio-1441, citing State v. Marshall (1978), 61 Ohio App.2d 84, 86. Thus it has been held that "[a] toy gun is capable of inflicting death because of its possible use as a bludgeon." State v. Hicks (1984),14 Ohio App.3d 25, 26. Further, an inoperable gun can still be considered a deadly weapon if it can be used as a bludgeon. State v. Edwards (Oct. 29, 1992), Cuyahoga App. No. 61215.
 {¶ 15} At trial, Lawson testified that she saw Johnson hit the victim in the head with a gun. Dr. Rachedi testified that, while being treated, the victim stated that she had been hit in the head with the butt of the gun. Finally, during the 911 call, the victim stated that her husband hit her in the head with a gun and that she needed help.
 {¶ 16} We find that there was sufficient evidence for the jury to conclude that Johnson used the gun as a bludgeon, which is capable of inflicting death, and thus, a deadly weapon. Johnson's first assignment of error is overruled.
 {¶ 17} Johnson's second assignment states the following:
 {¶ 18} "The evidence is insufficient to support the conviction on the one-and the three-year firearm specifications."
 {¶ 19} Under this assignment of error, Johnson argues that the state failed to demonstrate that the gun was operable. We agree.
 {¶ 20} In order to convict Johnson of a firearm specification (either a one-year or a three-year specification pursuant to R.C. 2941.141 or2941.145, respectively), *Page 5 
the state must prove that the gun was an operable firearm. A "firearm" is defined as any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, including an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable. R.C. 2923.11(B)(1).
 {¶ 21} To determine whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm. R.C. 2923.11(B)(2).
 {¶ 22} "[A] firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. * * * [T]he trier of fact may consider * * * any implicit threat made by the individual in control of the firearm." State v. Thompkins, 78 Ohio St.3d 380, 385,1997-Ohio-52. Thus where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable. Id. at 384. "Thompkins clarifies that actions alone, without verbal threats, may be sufficient circumstances to establish operability of a firearm." State v. Reynolds, 79 Ohio St.3d 158,1997-Ohio-304 (noting that circumstantial evidence of two masked men waving guns and stating that they are committing a robbery was sufficient to *Page 6 
sustain a firearm specification). See, also, State v. Knight, Greene App. No. 2003 CA 14, 2004-Ohio-1941, at ¶ 19 ("both a weapon's existence and its operability may be inferred from the facts and circumstances").
 {¶ 23} Furthermore, a victim's belief that the weapon is a gun, together with the defendant's intent to create and use the victim's belief for the defendant's own criminal purposes, is sufficient to prove a firearm specification. See State v. Jeffers (2001), 143 Ohio App.3d 91
(sufficient evidence existed to support a firearm specification when a robbery defendant kept his hand in his pocket and told a convenience store employee that he would "blow [her] head off" if she did not comply); State v. Obsaint, Hamilton App. No. C-60629, 2007-Ohio-2661
(defendant's written admission that he had a gun, in a note that made repeated references to shooting the teller, was sufficient circumstantial evidence to show that he possessed an operable firearm);State v. Greathouse, Montgomery App. No. 21536, 2007-Ohio-2136
(sufficient evidence supported a firearm specification even though the victim never saw the gun, when the defendant told the victim that he had a gun and that he would kill her and dump her body if she did not comply); In re Wallace, Stark App. No. 2007CA000156, 2008-Ohio-1389
(finding that operability of the firearm could be inferred from the defendant's actions of sticking a gun in the victim's face and demanding her purse).
 {¶ 24} In this case, the testimony revealed that Johnson used the handle of the gun to strike the victim; however, there is no evidence in the record that the gun was *Page 7 
an operable firearm. Johnson made no threats or statements to indicate that the gun was operable and never waved it at the victim. Further, Johnson used the gun as a bludgeon, not as a firearm. Finally, the gun was not recovered, so it could not be tested for operability. Accordingly, we find that the evidence was insufficient to find Johnson guilty of the firearm specifications. Johnson's second assignment of error is sustained.
 {¶ 25} Johnson's third assignment of error states the following:
 {¶ 26} "The conviction was against the manifest weight of the evidence."
 {¶ 27} Johnson argues that there is no evidence that he used a deadly weapon, that Lawson was not a credible witness, and that her testimony was not corroborated.
 {¶ 28} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.)Leonard, 104 Ohio St.3d at 68.
 {¶ 29} As stated previously, Lawson testified that she saw Johnson hit the victim in the head with a gun. Dr. Rachedi and the 911 tape corroborated Lawson's *Page 8 
testimony that the victim was hit in the head with the butt of a gun. Johnson used the gun as a bludgeon. We find that there was substantial evidence upon which a jury could reasonably conclude that the gun used by Johnson was a deadly weapon.
 {¶ 30} Also, we find no merit to Johnson's argument that the only evidence presented was that of an admitted habitual drug abuser and, thus, not credible. Although, Lawson admitted to drinking alcohol that night, she testified that she was not drunk. Further, Lawson's testimony regarding the assault was corroborated by the victim through the 911 tape and the doctor. Accordingly, we find that the jury did not lose its way when it convicted Johnson. Johnson's third assignment of error is overruled.
 {¶ 31} Judgment affirmed in part, vacated in part, and remanded.
 {¶ 32} This cause is affirmed in part, vacated in part and remanded to the lower court for correction of the journal entry to vacate the sentence related to the firearm specifications.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 9 
 COLLEEN CONWAY COONEY, P.J., and MELODY J. STEWART, J., CONCUR *Page 1